## SUPERIOR COURT OF BALTIMORE CITY.

Filed January 8, 1907.

ELDRIDGE C. PRICE, EXECUTOR OF ELIAS C. PRICE,

VS.

MUTUAL RESERVE LIFE INSURANCE COMPANY.

*J. Kemp Bartlett* and *Joseph P. Merryman* for plaintiff.

*John M. Carter* and *John P. Poe* for defendant.

NILES, J.—

In this case the questions now to be decided arise upon the pleadings, which are voluminous.

There is a declaration of thirteen counts, to which are pleaded twenty-three pleas, and there are replications, rejoinders, surre-joinders, rebutter and surre-butter.

Demurrers have been filed to several of these pleadings, and under these demurrers, almost every pleading upon both sides is attacked by the opposite party.

First. The Declaration. The declaration is assailed by the defendant upon the ground that there is a misjoinder of twelve counts in contract with one count in tort. In this State, if such a misjoinder exists, it is fatal. The first four counts in the narr are the common counts in assumpsit. The next eight counts are for alleged breaches of contract of insurance. The last count is as follows:

"And for that 13th, the defendant, by false and fraudulent representations made to the plaintiff's testator, induced the said testator to accept a policy of insurance No. 8000, issued by the defendant on the life of said testator; and said testator from 1882 to 1898, inclusive, paid the defendants, for premiums and mortuary assessments, the sum of twenty-three hundred dollars ($2,300), which payments were made by the said testator to the defendant, on representations of the said defendant, which representations were false and fraudulent; and the said mortuary assessments during said period of time, viz., from 1882 to 1898, inclusive, were illegal and wrongfully made, and assessed on said Policy No. 8000 by the defendant, and of which said fraud and wrong the plaintiff's testator was ignorant at the time of making said payments."

In the opinion of this court this is a count in deceit.

The action of the defendant complained of is a tort, to wit: The fraudulent procurement of money from the plaintiff, the fraud consisting in certain representations made by the defendant to the plaintiff in relation to a certain policy of insurance and the premiums and mortuary assessments thereon.

The fact that this count is in tort becomes perhaps still more apparent, when we consider that the plaintiff joined issue upon the nineteenth plea of the defendant, which applies to the count in question, and is "that it did not induce the plaintiff's testator by any false or fraudulent representations whatever to accept the policy of insurance in said count mentioned."

The issue, then, upon this count, as accepted by the plaintiff, is whether or not the defendant induced the plaintiff's testator by fraud to accept a certain contract. When such is the issue, it is idle to argue that the count declares upon the contract itself, or can be united in one suit with other counts declaring upon the contract. The demurrer to the plaintiff's declaration will be sustained.

Second. The Pleas. The judgment of the court, as just stated, will be that the demurrer to the plaintiff's declaration will be sustained, but inasmuch as the plaintiff can easily amend his declaration by striking out the thirteenth count, this court will take up and express its opinion in regard to what seems to it the controlling points arising upon the succeeding pleadings.

The plaintiff attacks the twenty-third plea of the defendant. This plea is as follows:

"23rd. And for a further and final plea to the 5th, 6th, 7th, 8th, 9th, 10th, 11th, 12th and 13th counts of the amended declaration, it says that on or about the 1st day of April, 1898, the plaintiff's testator, with full knowledge of all the facts and doings of the defendant with reference to the making and collecting of assessments upon the policy of insurance in said counts mentioned, and without any concealment or misrepresentation whatsoever made by the defendant to him, voluntarily elected to discontinue payment of the mortuary assessments and dues lawfully levied and assessed by the defendant and upon said policy, and thereby voluntarily suffered the said policy to lapse.

"And the defendant says that by said voluntarily discontinuance on the part of the plaintiff's testator to pay said assessments, all his rights and claims against the said Mutual Reserve Fund Life Association, and against the defendant as the alleged successor of the said Mutual Reserve Fund Life Association wholly ceased and determined, according to the express terms and conditions of said policy, and that all the obligations of said Mutual Reserve Fund Life Association and of this defendant as the alleged successor thereof wholly ceased

and ended, and the said policy in said counts mentioned became wholly null and void. And the defendant in fact says that, when the plaintiff's testator departed this life in June, 1902, he had, as hereinbefore stated, full knowledge of all the acts and doings of the defendant in relation to said policy, and had had such full knowledge thereof for more than four years, and had with such knowledge fully acquiesced in and assented for more than four years to the acts and doings of the defendant in making and collecting the assessments on his said policy, and well knew that his said policy had lapsed and had become null and void, and that all his rights and claims thereunder had wholly ceased."

It seems to this court that this plea is double; that it contains two distinct grounds of defense, when one alone would be effectual at law.

If, by "voluntary discontinuance," all the rights and claims of plaintiff's testator against the defendant wholly ceased and determined, according to the express terms and conditions of the policy, the plaintiff has no case. Such a defense is good whether the plaintiff lived one hour or forty years thereafter, and whether he spent the rest of his life in glad acquiescence or in sad self-reproach.

On the other hand, if more than four years had elapsed since the last payment complained of, was made, and if plaintiff, during all those four years had "full knowledge of all the facts and doings of the defendant in relation to said policy," the plaintiff has no case, no matter what the provisions of the policy might be, and no matter whether there was a voluntary discontinuance or not. In such case, limitations would be a complete bar. Duplicity seems, in Maryland, to be a defect of substance making a pleading bad upon general demurrer and, in the judgment of this court, the defendant's twenty-third plea is bad upon this ground.

A similar plea to this was filed in the case of Eldridge C. Price vs. The Mutual Reserve Life Insurance Co., 102 Md., 683. A demurrer was interposed to that plea, but does not seem to have been passed upon by the Court of Appeals. The plea is merely referred to in the opinion of the court as showing what were the facts admitted on the pleadings; but inasmuch as, by the decision of the court, the demurrer was sustained to the declaration, and thereby the whole case practically decided in favor of the defendant, the validity of the plea was not, and could not have been, determined by the Court of Appeals.

Third. Replications and Subsequent Pleadings. Inasmuch as the rulings of this court, holding the declaration bad for misjoinder, and the 23rd plea bad for duplicity, would render necessary a change in the frame of the subsequent pleadings, in the event that the parties chose to conform to the views of this court by amendment, it seems better to take up what is apparently the controlling question presented by the final pleadings upon its merits, rather than to discuss the form of each pleading as it at present stands.

This, which we have just called "apparently the controlling question," arises as follows: The defendant sets out in full certain correspondence between the parties, the last item of which is a letter from the plaintiff's testator to the defendant, dated March 1, 1898, which letter concludes: "Please cancel my policy, as requested, at the time mentioned" (April 1, 1898.) The defendant then alleges that, in pursuance of that expressed direction, the policy was cancelled.

The plaintiff to meet this defense, sets out in full a letter from George D. Eldridge, Third Vice-President and Actuary of the defendant, to Doctor Price, dated February 8, 1898, and alleges that that letter contained false and fraudulent statements which were believed by the plaintiff to be true, and which induced him to write the letter above alluded to, in which the cancellation of the policy was directed; and the plaintiff also says, that he did not discover the fraudulent character of the statements contained in the letter to him, nor could he, or his testator, have done so by the exercise of reasonable diligence, until a time within three years from the institution of this suit.

The question then presented is whether, assuming that the statements in the last-mentioned letter to the plaintiff's testator were false and made with the design to mislead the plaintiff's testator, they were statements of such a kind as to give the plaintiff a right to rely upon them, and, upon discovery of their falsity, to avoid a

settlement which he had been induced to make by reason of his reliance upon them. The letter in full is as follows:

"February 8, 1898.

"Elias C. Price, M. D.,

1012 Madison Ave., Baltimore, Md.

"Dear Sir:

I beg to acknowledge the receipt of your letter of the 1st instant, addressed to the President. The reapportionment of the rates under your policy is strictly in accordance with the terms of the contract (which is a contract of protective life insurance granted at current cost), and is necessary in order that you and the other members of your class should pay your proportionate share of the mortality of the Association. This question is covered succinctly in the Actuary's statement which was forwarded with the call and duplicate of which is herewith enclosed. It is much more fully dealt with in the President's current annual address (specially pages 13 to 20, inclusive), a copy of which will reach you under separate cover within a few days.

"Your policy having been issued at rates based merely to meet current cost, you must consequently be called upon to pay such cost. The Association's business is on a better foundation for the future than ever before. Its later policy, which differs materially from the form held by you, has been sold at much higher rates, adequate to the end of remaining level throughout life, to which end the rates under contracts such as you hold were not designed, and practically all of its business is now written on the latest form.

"The 'Fifteen Year Class' refers to the form of contract under which you are insured and not to the length of time your insurance has been in force, and it takes its name from the fact that the first application of the benefit of surplus accrues at the end of fifteen years of membership. There is no division into classes for the purpose of the payment of death claims. For the payment of every such claim in full is pledged with its accumulated assets. Each class must merely pay its proportionate share of the mortality. Bear in mind, that there is a difference, doubtless not only in the forms of contract you and your son carry, but also in your respective ages.

"Inasmuch as you have not been called upon under your policy for the excess premium necessary to create such a reserve as would meet the increasing cost due to advancing age in the later years, but have paid merely current cost, there is no fund to the credit of your policy from which paid up or surrender values can be granted, as your payments in the past have not been sufficient to accumulate the same.

"Yours, very truly,

"(Signed)    Geo. D. Eldridge,

"Third Vice-President and Actuary."

It is the opinion of this court, that the letter just above set forth contains nothing except a statement of the position of the defendant as to the legal construction of the policy of the plaintiff's testator, and its legal rights thereunder.

Doctor Price had no right to rely upon the company's statement of the law. The insured is under the same obligations to know the law that the company or its agent is, and no party to a contract has a right to rely upon the other party when a mere legal conclusion as to the effect of the contract is stated.

As argued by the defendant's counsel in his brief, when the defendant took such action in regard to Doctor Price's policy, as Doctor Price considered unjustifiable, and stated to him the reasons upon it based its claim of right to take such action, Doctor Price had three courses open to him: 1st. He could waive any inquiry into the validity of the reasons alleged by the company, submit to its claims, and pay its assessments. 2nd. He could make inquiry into the validity of the reasons alleged by the company and test the company's right to take the action proposed by it, continuing meanwhile to conform to the contract as he understood it, and make the tenders necessary upon his theory. 3rd. He could waive all inquiry into the reasons alleged by the company, quit the company and abandon all claim. He chose the third course. He waived inquiry into the validity of the reasons stated by the company; he made no attempt to test the validity of its legal contention; he chose simply to quit.

This court does not think that, after making that deliberate choice, he can attack the company's statement of its legal position as a fraud upon him, and on the allegation that he was

mislead by that statement and annul his own deliberate act.

From the face of all the pleadings, it appears to this court that in 1898 both parties concluded to abandon the policy of insurance issued upon the life of Doctor Price; that this agreement was brought about, not by reason of any misrepresentation as to fact, but by reason of the acquiescence of the plaintiff's testator in what the defendant claimed was the law. Such a settlement will not now be disturbed.

It may well be that the proceedings of the defendant were in fact highly unmeritorious. This is not the question now before us. The only question here is, does the plaintiff, on the face of the pleadings demurred to, show a good case as against the defendant, and this court holds that it does not.

In pursuance of the above opinion, judgment will be entered sustaining the defendant's demurrer to the plaintiff's declaration.